**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH DAKOTA**



CHARLES L. NAIL, JR.
BANKRUPTCY JUDGE

---

FEDERAL BUILDING AND UNITED STATES POST OFFICE          TELEPHONE:  (605) 945-4490
225 SOUTH PIERRE STREET, ROOM 211                              FAX:  (605) 945-4491
PIERRE, SOUTH DAKOTA  57501-2463

October 30, 2007

Bruce J. Gering
Assistant United States Trustee
230 South Phillips Avenue, Suite 502
Sioux Falls, South Dakota  57104-6321

Clair R. Gerry, Esq.
Attorney for Debtors
Post Office Box 966
Sioux Falls, South Dakota  57101-0966

       Subject:   *In re Michael Paul Masur and Debora Kae Masur*
                Chapter 7; Bankr. No. 07-40213

Dear Counsel:

       The matter before the Court is the United States Trustee's Motion to Dismiss Pursuant to 11 U.S.C. §§ 707(b)(2) and (b)(3).  This is a core proceeding under 28 U.S.C. § 157(b)(2).  This letter decision and accompanying order shall constitute the Court's findings and conclusions under Fed.Rs.Bankr.P. 7052 and 9014(c).  As discussed below, the United States Trustee's motion will be granted.

       *Summary*.  The parties eschewed a hearing on the United States Trustee's motion, opting instead to submit the matter on stipulated facts and issues.  The parties stipulated to the following facts:

       1.  Debtors are a married couple with a six (6) year old daughter who filed for Chapter 7 relief on April 25, 2007.[1]

       2.  Mr. Masur is a store manager for Hy-Vee, Inc. and Mrs. Masur is a clerk at Macy's department store.

---

    [1]  Presumably, the parties meant Debtors, not their daughter, filed for chapter 7 relief.

Re: *Michael Paul Masur and Debora Kae Masur*
October 30, 2007
Page 2

    3.  Pre-petition Debtors surrendered a 1996 Jeep Grand Cherokee to secured creditor First Premier Bank.

    4.  First Premier Bank was listed as a secured creditor on Debtors' Schedule D relating to the 1996 repossessed Jeep, and listed in the Statement of Financial Affairs question #5 as having repossessed the Jeep and Debtors' estimated value.  The repossessed Jeep was not listed on Schedule B.

    5.  At the time of filing the repossessed Jeep was still in Debtors' names and the secured debt was still owed.  Debtors received notice of creditor's proposed sale of the Jeep on June 22, 2007.

    6.  At the time of filing Debtors owned a homestead and still remain in possession of the said homestead.

    7.  Debtors have two mortgages against the homestead as listed on Schedule D.  Debtors have not made a mortgage payment on the two mortgages since approximately October, 2006.

    8.  Debtors' Statement of Intent indicates that Debtors intend to surrender the homestead.

    9.  Debtors own a 1995 Mitsubishi Galant with high mileage and damage.  As disclosed on Statement of Financial Affairs question #14, Debtors are using a 1987 Ford pickup as their necessary second vehicle.

    10.  Mr. Masur has a 401-k through his employment with a balance as of the date of the Petition in the amount of $47,603.44.  He has a loan against stated 401-k, on the date of the Petition in the amount of $26,611.33.

    11.  By the terms of the 401-k plan Debtor is required to repay the loan, with interest, and the loan is only borrowed against funds in Debtor's account.

    12.  The debts owed by Debtors are primarily consumer debts.

Re: *Michael Paul Masur and Debora Kae Masur*
October 30, 2007
Page 3

13. The expenses claimed by Debtors on lines 25 through 41 of the Amended Official Form B22A filed by Debtors are actual, reasonable and necessary and for purposes of this hearing itemized as follows:[2]

| | | |
|---|---|---|
| a. Line 25 – Taxes | $ | 883.45; |
| b. Line 27 – Term Life Insurance | $ | 48.70; |
| c. Line 30 – Childcare | $ | 359.83; |
| d. Line 31 – Health Care | $ | 283.99; |
| e. Line 34 – Insurance | $ | 262.33; and |
| f. Line 40 – Charitable Contributions | $ | 150.00. |

15. The average monthly payment of amounts contractually due in the sixty (60) months following the Bankruptcy Petition, divided by 60 is the following amount as to each listed creditor:

| | | |
|---|---|---|
| a. First Premier Bank [repossessed Jeep] | $ | 115.37; |
| b. Hy-Vee, Inc. [401-k loans] | $ | 443.52; |
| c. CitiFinancial [first mortgage] | $1,503.74; and |
| d. Beneficial [second mortgage] | $ | 367.84. |

16. Payments necessary to cure arrearages owed to secured creditors, divided by 60 establish a monthly payment to CitiFinancial to cure the home mortgage in the amount of $195.39 for sixty (60) months and Minnehaha County to pay accrued, past due real estate taxes on the homestead in the amount of $92.00 per month.

17. Debtors' current monthly income exceeds the applicable median income for a household size of three (3) in the state of South Dakota.

Parties' Stipulation of Facts and Issues (doc. 28).[3] The parties also stipulated to five issues, each of which will be addressed in turn below.

––––––––––––––––––––

[2] The amount listed for "Insurance" ($262.33) is different than the amount listed for "Health Insurance" ($268.00) on line 34 of Debtors' Amended Official Form B22A ("Chapter 7 Statement of Current Monthly Income and Means-Test Calculation") (doc. 35). The Court used the amount in the Amended Official Form B22A for its calculations herein.

[3] The parties' stipulation does not include a fact number 14.

Re:  *Michael Paul Masur and Debora Kae Masur*
October 30, 2007
Page 4


 *Discussion*.  Pursuant to 11 U.S.C. § 707(b), "the court . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter."  11 U.S.C. § 707(b)(1).  The Court must presume abuse if the debtor's current monthly income,[4] less the debtor's monthly expenses,[5] multiplied by 60 is not less than the lesser of:  (1) 25% of the debtor's nonpriority unsecured claims or $6,575, whichever is greater; or (2) $10,950.  11 U.S.C. § 707(b)(2)(A)(i).[6]  "[T]he presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces."  11 U.S.C. § 707(b)(2)(B)(i).  If the presumption of abuse does not arise or is rebutted, the Court may nevertheless dismiss the case for abuse if the debtor filed the petition in bad faith, 11 U.S.C. § 707(b)(3)(A), or the "totality of the circumstances . . . of the debtor's financial situation demonstrates abuse," 11 U.S.C. § 707(b)(3)(B).

---

 [4] With one exception not applicable in this case, a debtor's current monthly income is "the average monthly income from all sources that the debtor [and the debtor's spouse receive] during the 6-month period ending on . . . the last day of the calendar month immediately preceding the date of the commencement of the case[.]"  11 U.S.C. § 101(10A).

 [5] A debtor's monthly expenses include "the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief," 11 U.S.C. § 707(b)(2)(A)(ii)(I); "the actual administrative expenses of administering a chapter 13 plan," 11 U.S.C. § 707(b)(2)(A)(ii)(III); other amounts not relevant in this case, 11 U.S.C. § 707(b)(2)(A)(ii)(II), (IV), and (V); "[t]he debtor's average monthly payments on account of secured debts," 11 U.S.C. § 707(b)(2)(A)(iii); and "[t]he debtor's expenses for payment of all priority claims," 11 U.S.C. § 707(b)(2)(A)(iv).

 [6] Pursuant to 11 U.S.C. § 104(b), effective April 1, 2007, the dollar amounts in 11 U.S.C. § 707(b)(2)(A)(i)(I) and (II) were increased from $6,000 and $10,000 to $6,575 and $10,950, respectively.  Revision of Certain Dollar Amounts in the Bankruptcy Code Prescribed under Section 104(b) of the Code, 72 Fed. Reg. 7082-01 (Feb. 14, 2007).

Re:  *Michael Paul Masur and Debora Kae Masur*
October 30, 2007
Page 5


*Does the ownership costs expense allowance apply to vehicles owned free and clear?*  Two distinct lines of cases have developed with respect to this issue.  The Court will resist the temptation to list all the cases on both sides of the issue, provide a current "head count," quote extensively from the line of cases following *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006) (disallowing the expense), and the line of cases following *In re Fowler*, 349 B.R. 414 (Bankr. D. Del. 2006) (allowing the expense), and "respectfully disagree" with one or the other line of cases.  Suffice to say the Court agrees with and adopts the reasoning of those courts (including the only two district courts that appear to have addressed the issue to date) that have held debtors may not claim an ownership expense for a vehicle they own free and clear.  *See*, *e.g.*, *Fokkena v. Hartwick*, 373 B.R. 645 (D. Minn. 2007); *Neary v. Ross-Tousey* (*In re Ross-Tousey*), 368 B.R. 762 (E.D. Wis. 2007); *In re Bennett*, 371 B.R. 440 (Bankr. C.D. Cal. 2007); *In re Slusher*, 359 B.R. 290 (Bankr. D. Nev. 2007); *In re Brown*, Bankr. No. 06-35827, 2007 WL 3003000 (Bankr. S.D. Tex. Oct. 16, 2007).

Thus, Debtors may not claim an ownership expense for their 1995 Mitsubishi Galant.  Their monthly expenses must therefore be reduced by $471.00, the amount of the ownership expense claimed on Line 23 of their Amended Official Form B22A.

*May Debtors claim operating expenses and ownership expenses for a vehicle which has been surrendered to the secured creditor but is still owned by Debtors?*  Neither party cited the Court to any direct authority on this issue, and the Court has not found any such authority.[7]  However, Debtors surrendered the 1996 Jeep Grand Cherokee prior to filing their petition.  Thus, regardless of the fact the vehicle was still titled in their names, Debtors were no longer incurring either ownership expenses or operation expenses with respect to that vehicle on their petition date.  The same reasoning that supports disallowing an ownership expense with respect to a vehicle a debtor owns free and clear also supports disallowing both an ownership expense and

---

[7]  The cases cited by Debtors on this issue actually dealt with the separate issue of whether § 707(b)(2)(A)(iii) permits a debtor who *intends* to surrender the collateral securing a debt to include the *monthly payments* on that debt in the means test calculation.  The Court was able to find cases addressing the closely related issue of whether a debtor who *intends* to surrender a vehicle securing a debt may claim an *operation expense* for that vehicle.  *See*, *e.g.*, *In re Skaggs*, 349 B.R. 594 (Bankr. E.D. Mo. 2006) (disallowing the expense); *In re Sorrell*, 359 B.R. 167 (Bankr. S.D. Ohio 2007) (allowing the expense).  However, that is not the precise issue framed by the parties, either.

Re:  *Michael Paul Masur and Debora Kae Masur*
October 30, 2007
Page 6


an operation expense with respect to a vehicle a debtor has surrendered.  *See*, *e.g.*, *Hartwick*, 373 B.R. at 650 (quoting *Ross-Tousey*, 368 B.R. at 765-66 ("This reading [of § 707(b)(2)(A)(ii)(I)] gives meaning to the important distinction between 'applicable' and 'actual' without taking the further, unwarranted, step of concluding that the expense may be applicable even though it does not even exist.")).

Thus, Debtors may not claim either an ownership expense or an operation expense for the 1996 Jeep Grand Cherokee they surrendered prior to filing their petition.  Debtors' monthly expenses must therefore be reduced by $332.00, the amount of the ownership expense claimed on Line 24 of their Amended Official Form B22A.

The United States Trustee indicated in his brief that on the date they filed their petition, Debtors were only paying the operating expenses for one vehicle.  However, Debtors were operating two vehicles:  their 1995 Mitsubishi Galant and a 1987 Ford pickup.  Nothing in the record suggests anyone other than Debtors was paying the operating expenses for both vehicles.  Consequently, Debtors may claim an operation expense of $358.00 for those vehicles, which they have done on Line 22 of their Amended Official Form B22A.

In addition, as the United States Trustee suggests in his brief, because the 1995 Mitsubishi Galant is more than six years old, Debtors may claim an additional operation expense of $200.00 for that vehicle, which they have not done on Line 22 of their Amended Official Form B22A.[8]  Debtors' monthly expenses will therefore be increased by $200.00.

*Does an expense allowance apply to payments on secured debt when Debtors intend to surrender the property securing the debt?*  Not two, but *three* distinct lines of cases have developed with respect to this issue.  Some courts – relying on the plain language of § 707(b)(2)(A)(iii)(I) – have concluded the phrase "all amounts scheduled as contractually due" permits a debtor to deduct payments on a secured debt, regardless of the debtor's stated intent to surrender the collateral securing the debt.

---

[8]  Because Debtors do not own the 1987 Ford pickup, they are not entitled to claim the additional operation expense for the pickup.  Internal Revenue Manual § 5.8.5.5.2(3) (Sept. 1, 2005) ("[I]n situations where the taxpayer *owns* a vehicle that is currently over six years old . . . an additional operating expense of $200 will generally be allowed . . . after the loan/lease has been 'retired[.]'") (emphasis added).

Re:  *Michael Paul Masur and Debora Kae Masur*
October 30, 2007
Page 7


*See*, *e.g.*, *In re Walker*, Bankr. No. 05-15010, 2006 WL 1314125 (Bankr. N.D. Ga. May 1, 2006).  Other courts – relying on the same plain language – have concluded that phrase does not permit a debtor to deduct payments on a secured debt if the debtor has stated an intent to surrender the collateral securing the debt.  *See*, *e.g.*, *In re Skaggs*, 349 B.R. 594 (Bankr. E.D. Mo. 2006).  Yet other courts have concluded § 707(b)(2)(A)(iii)(I) permits a debtor to deduct payments on a secured debt if he has only stated an intent to surrender the collateral securing the debt, but does not permit the debtor to deduct those payments if the debtor has acted on his stated intent and the creditor has been granted relief from the stay.  *See*, *e.g.*, *In re Singletary*, 354 B.R. 455 (Bankr. S.D. Tex. 2006).

All three lines of cases are discussed at some length in *In re Ray*, 362 B.R. 680, 683-84 (Bankr. D.S.C. 2007).  The Court will not repeat that entire discussion.  However, one particular point regarding the *Walker* line of cases bears mentioning.  That line of cases focuses on the words "scheduled as" to support their interpretation of § 707(b)(2)(A)(iii)(I), but their interpretation effectively renders those same words superfluous.  *See Ray*, 362 B.R. at 683.  That is problematic, since one of the cardinal principles of statutory construction is a court's duty to give effect to every word of a statute if it is possible to do so.  *Duncan v. Walker*, 533 U.S. 167, 174 (2001).

In any event, the Court agrees with and adopts the reasoning of the court in *Ray* and those other courts that have held a debtor may not deduct payments on a secured debt if the debtor has stated an intent to surrender the collateral securing the debt.

> [T]he better construction of "scheduled as contractually due" would consider the debtors' intention to surrender the collateral and make no future payments to the creditor.  This construction would not support deduction of average secured credit payments on debt secured by collateral that the debtor proposes to surrender.  This construction is also in keeping with the overall purpose of establishing a formula that will give rise to a meaningful presumption of abuse or not.  In considering whether debtors are abusing chapter 7 it is proper to construe the statute in such a way as to determine whether they have an ability to repay their general unsecured creditors once they have carried out their stated intentions.

*Ray*, 362 B.R. at 685.

Thus, Debtors may not deduct the payments for the 1996 Jeep Grand Cherokee

or their home.  Debtors' monthly expenses must therefore be reduced by $1,986.95, the average monthly payments claimed on Line 42 of Debtors' Amended Official Form B22A for the 1996 Jeep Grand Cherokee ($115.37), the first mortgage on their home ($1,503.74), and the second mortgage on their home ($367.84).  For the same reasons, Debtors' monthly expenses must also be reduced by $287.39, the total "cure amount" claimed on Line 43 of their Amended Official Form B22A for their home.

As the United States Trustee points out in his brief, because they are not making a monthly mortgage payment, Debtors may claim a housing and utilities expense of $828.00 under the Internal Revenue Service's Local Standards, which they have not done on Line 20B of their Amended Official Form B22A.  Debtors' monthly expenses will therefore be increased by $828.00.

*May Debtors claim payments on loans from qualified retirement plans in computing whether the presumption of abuse arises on Form B22A?*  The general consensus appears to be loans from qualified retirement plans are not debts, much less secured debts, and thus payments on such loans may not be deducted under § 707(b)(2)(A)(iii).  *See*, *e.g.*, *Eisen v. Thompson*, 370 B.R. 762, 772 (N.D. Ohio 2007); *McVay v. Otero*, 372 B.R. 190, 203 (W.D. Tex. 2007); *In re Mordis*, Bankr. No. 06-42590–293, 2007 WL 2962903, at *4 (Bankr. E.D. Mo. Oct. 9, 2007); *In re Turner*, Bankr. No. 06-10877-MWV, 2007 WL 2669737, at *4 (Bankr. D.N.H. Sept. 6, 2007).  The Court agrees with and adopts the reasoning of the courts in the foregoing cases and those other courts that have held a debtor may not deduct payments on loans from qualified retirement plans.

In sum, Congress was presumably well aware of the case law holding that 401(k) loans were not "debts" under the Code, and that such obligations did not create creditor-debtor relationships, when it drafted the 2005 amendments.  Congress could have easily composed an amendment stating that 401(k) loans constitute "debts" or "secured debts."  It could have added 401(k) loan repayments to the list of expenses, under § 707(b)(2)(A), that a debtor may deduct in computing his monthly income for purposes of the means test.  Indeed, Congress wrote that 401(k) loans were not dischargeable in bankruptcy and that the filing of petitions did not operate as a stay on the repayment of those loans.  Congress excluded contributions to retirement accounts from property of the estate under § 541(b)(7), and exempted retirement accounts from property of the estate under § 522(n).  Obviously, Congress knew well how to craft direct language requiring courts to treat 401(k) loans as secured debts for purposes of the means test, and did

Re: *Michael Paul Masur and Debora Kae Masur*
October 30, 2007
Page 9


not.  In the face of overwhelming case law holding that 401(k) loans are not debts under the Code, I will not find otherwise on this record.

*Eisen*, 370 B.R. at 772.

Thus, Debtors may not deduct the payments on their 401(k) loans.  Debtors' monthly expenses must therefore be reduced by $443.52, the average monthly payment claimed on Line 42 of Debtors' Amended Official Form B22A for their 401(k) loans.

Taking all the foregoing adjustments to Debtors' Amended Official Form B22A into account, the Court finds Debtors' 60-month disposable income is greater than $10,950:

| | | |
|---|---:|---:|
| current monthly income | | $5,910.51 |
| | | |
| total claimed deductions | $7,355.83 | |
| less ownership expense for Mitsubishi | -   471.00 | |
| less ownership expense for Jeep | -   332.00 | |
| plus added operation expense for Mitsubishi | +   200.00 | |
| less payment on Jeep Cherokee | -   115.37 | |
| less payment on first mortgage | -1,503.74 | |
| less payment on second mortgage | -   367.84 | |
| less cure payments on home | -   287.39 | |
| plus housing and utilities expense | +   828.00 | |
| less payment on 401(k) loans | -_  443.52_ | |
| | | |
| total allowed deductions | | -_4,862.97_ |
| | | |
| monthly disposable income | | $1,047.54 |
| | | |
| 60-month disposable income | | $62,852.40 |

The Court must therefore presume abuse exists in this case.  *See* 11 U.S.C. § 707(b)(2)(A)(i).  Debtors have not rebutted the presumption of abuse or requested an opportunity to convert to chapter 13.  Consequently, the Court must grant the United States Trustee's motion.

*May Debtors' case be dismissed per 11 U.S.C. § 707(b)(3) when the presumption of abuse does not arise or is rebutted under 11 U.S.C. § 707(b)(2)?* This

Re: *Michael Paul Masur and Debora Kae Masur*
October 30, 2007
Page 10


issue has been rendered moot by the Court's rulings on the first four issues presented and the Court's resulting decision to dismiss Debtors' case pursuant to § 707(b)(1) and (2).

      The Court will enter an order granting the United States Trustee's motion.

      Sincerely,

Charles L. Nail, Jr.
Bankruptcy Judge

cc:    case file (docket original; serve copies on parties in interest)

On the above date, a copy of this document
was mailed or faxed to the parties shown on the
Notice of Electronic Filing as not having received
electronic notice and Debtor(s), if Debtor(s) did
not receive electronic notice.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

**NOTICE OF ENTRY**
**Under Fed.R.Bankr.P. 9022(a)**

**This order/judgment was entered**
**on the date shown above.**

**Frederick M. Entwistle**
**Clerk, U.S. Bankruptcy Court**
**District of South Dakota**